# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LISA TRAVELSTEAD and KAARL TRAVELSTEAD,**

          **Plaintiffs,**

v.                                                                  Case No: 6:22-cv-1459-RBD-EJK

**U.N. MANAGEMENT LIMITED LIABILITY COMPANY and NATVARLAL V. UMRIGAR,**

          **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice (the "Motion") (Doc. 21), filed November 14, 2022. Upon consideration, I respectfully recommend that the Motion be granted.

### I.    BACKGROUND

On August 16, 2022, Defendants, U.N. Management Limited Liability Company d/b/a Days Inn, and Natvarlal V. Umrigar, removed this action to this Court from the Eighteenth Judicial Circuit in and for Brevard County, Florida. (Doc. 1.) Plaintiffs alleged unpaid overtime and minimum wage compensation claims in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, and the Florida Minimum Wage Act ("FMWA") under Article X, Section 24 of the Florida Constitution. (Doc. 1-1.)

Plaintiffs allege that they were employed at Defendants' hotel, where they handled office paperwork, reservations, took payments, received calls, assisted guests, and handled customer complaints. (*Id.* ¶¶ 10, 22.) Plaintiff Lisa Travelstead worked at Defendants' hotel from October 5, 2019, to October 29, 2021, and Plaintiff Kaarl Travelstead worked there from October 5, 2019, to April 28, 2022. (*Id.* ¶¶ 20, 21.) Plaintiffs allege that they worked a schedule of 6 days per week. (*Id.* at ¶ 27.) Further, Lisa Travelstead alleges that from October 5, 2019, to February 25, 2020, she was paid no wages, while Kaarl Travelstead alleges that from October 5, 2019 to April 28, 2022, he worked between 54 and 66 hours per week and would receive a weekly salary of only $221.66 and $350. (*Id.* at ¶¶ 25, 26.)

After removal, Plaintiffs and Defendants negotiated a compromise and settlement of Plaintiffs' claims and filed the instant Motion for approval of their settlement agreement, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 21.)

II.   **STANDARD**

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee

or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because

- 3 -

initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a

settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

## III. DISCUSSION

### A. Settlement Amounts

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wages and unpaid overtime compensation plus an additional, equal amount, as liquidated damages. 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.")

According to the Settlement Agreement and Release of Fair Labor Standards Act Claims (the "Settlement Agreement") (Doc. 21-1), Defendants have agreed to pay Plaintiff Lisa Travelstead $6,710 in wage compensation and $6,710 in liquidated damages. (*Id.* ¶ 3.a.) Defendants have agreed to pay Plaintiff Kaarl Travelstead $15,290 in wage compensation and $15,290 in liquidated damages.[2] (*Id.*) The Settlement Agreement delineates that the settlement amounts will be paid in five separate installments over five months, ending March 1, 2023. (*Id.*)

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

[2] The undersigned notes that the Motion states slightly different settlement amounts than the Settlement Agreement. (*Compare* Doc. 21 ¶ 7 *with* Doc. 21-1 ¶ 3.a.) The undersigned assumes the amounts stated in the Motion are the result of a scrivener's error and defers to the amounts set forth in the Settlement Agreement.

In the answers to the Court's interrogatories as well as the Motion, Plaintiffs allege that Lisa Travelstead is entitled to minimum wages for about 1,984 hours, and is owed about $18,866, and Kaarl Travelstead estimates working in the range of 54 to 65 hours per week, and is owed about $42,603, comprised of $33,004 in minimum wages and $9,599 in overtime wages. (Doc. 21 ¶ 3; Doc. 20-1 ¶ 7; Doc. 20-2 ¶ 7.) Because Plaintiffs will receive less than the maximum amount to which they claim they are entitled to under the FLSA, they have compromised their claims within the meaning of *Lynn's Food,* 679 F.2d at 1354–55.

On review, I find the amounts Plaintiffs have agreed to accept in satisfaction of their claims to be fair and reasonable, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. Specifically, I find this amount fair in relation to the nature of the dispute over the wages Plaintiff was owed, as well as the disputes over the accuracy of Defendants' employment records, whether the corporate Defendant was a "covered enterprise" under the FLSA, whether Defendants were entitled to take a lodging credit against minimum wages due to Plaintiffs, whether Defendants willfully violated the FLSA, and whether the individual Defendant was personally liable as an "employer" under the FLSA. (Doc. 21 ¶ 2.) Thus, I recommend finding that the settlement amounts to Plaintiffs represent a fair resolution of a *bona fide* dispute between the parties, and that Plaintiffs have not unfairly compromised their claims.

**B. Attorney's Fees**

Plaintiff's attorney will receive a total of $6,000.00 in attorney's fees. (Doc. 21-1 ¶ 3.a.)[3] Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Plaintiffs and the settlement is otherwise reasonable on its face; therefore, further review is not required. (*Id.*); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (If the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

**C. Release**

The parties have agreed to the following release:

> a. This Agreement shall constitute a waiver and release of overtime and minimum wages claims Plaintiff might have under the FLSA and Florida statutes against Defendants.
>
>    . . . .
>
> c. Plaintiff hereby knowingly and voluntarily releases Defendants of and from all claims brought for overtime compensation and minimum wage under the Fair Labor Standards Act and Florida statutes.

(the "Release") (Doc. 21-1 ¶ 2.) Thus, the Release is directed at all three counts in the

---

[3] *See* note 2, *supra*.

Complaint, which were brought pursuant to the FLSA as well as the FMWA. (*See* Doc. 1-1.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Judges in this District have found releases similar to the one presented here to pass judicial scrutiny because it does not require Plaintiffs to release unknown claims that are unrelated to their FLSA claims. *Pond v. Red Lambda, Inc.*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4808744, at *4 (M.D. Fla. Aug. 3, 2020) (Dalton, J.) (recommending approval of release of "unpaid wage and hou[r] and/or related claims arising solely out of the same facts or circumstances related to those in the above-captioned action"), *report and recommendation adopted*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4785449 (M.D. Fla. Aug. 18, 2020); *Batchelor v. Gen. Mar. Corp.*, No. 6:15-cv-2082-Orl-41KRS, 2016 WL 4467136, at *1 (M.D. Fla. Aug. 24, 2016) (approving release where it was "limited to wage claims."); *Monahan v. Rehoboth Hosp., Inc.*, 6:15-cv-1159-Orl-40KRS, 2015 WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015) ("The undersigned sides with those decisions holding that a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in

the complaint."). Therefore, because the Release provision releases only Plaintiffs' FLSA and related FMWA claims against Defendants and does not seek to release other non-related claims against unnamed parties, I recommend that the Court find that this Release passes judicial scrutiny. *See Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted).

### D. Separate Agreements

The parties have also entered into a second, separate agreement ("Separate Agreement"), which they have submitted to the Court. (Doc. 21-2.) According to the parties, this agreement, for which Defendants are paying separate consideration of $26,000, with $13,000 to be paid to each Plaintiff, is "wholly separate from the FLSA settlement." (Doc. 21 ¶ 9; Doc. 21-2 ¶ 1.) The parties represent that the Separate Agreement was necessary because there exist other potential legal claims that Plaintiffs could have, but did not, allege against Defendants in this case, including a wrongful eviction claim. (Doc. 21 ¶ 9.) Further, the parties have characterized the payment under the Separate Agreement as "non-FLSA damages." (Doc. 21-2 ¶ 1.)

"Where FLSA plaintiffs actively pursue non-FLSA claims . . ., some courts have approved separating settlement of the FLSA and non-FLSA claims into separate agreements, even where the non-FLSA agreement was not submitted to the court." *Wilburn v. Paradise Lawns & Landscaping, Inc.*, No. 6:14-cv-1557-Orl-37TBS, 2015 WL 13793352, at *2 (M.D. Fla. Feb. 13, 2015), *report and recommendation adopted*, 2015 WL 13793264 (M.D. Fla. Feb. 19, 2015). "But, where there is no indication that a plaintiff is pursuing or could pursue a non-FLSA claim, courts have viewed the execution of

- 9 -

separate agreements with skepticism and have considered whether the agreements are simply two parts of the same agreement." *Id.*

While Plaintiffs did not pursue other non-wage claims in this case, the undersigned is sufficiently satisfied that Plaintiffs had other viable claims that they could have brought against Defendants, including a wrongful eviction claim. (Doc. 21 ¶ 9; Doc. 21-2 at 1 ("Plaintiffs identified additional claims against the Defendants, including the Defendants' alleged unlawful eviction of the Plaintiffs[.]")) Moreover, the amounts that Plaintiffs are receiving for their FLSA claims are more than the amounts that they are receiving for the release of their non-FLSA claims, further evidencing that the Separate Agreement is not being used to undermine the public policy underlying the FLSA. Accordingly, the undersigned concludes that "the existence of a separate agreement settling . . . non-FLSA claims, with separate consideration paid, [is not] an impediment to the FLSA settlement." *Landfair v. Optimal Phone Interpreters, Inc.*, No. 6:12-cv-1747-Orl-37DAB, 2013 WL 12388629, at *3 (M.D. Fla. June 20, 2013) (finding no need for court review of separately settled non-FLSA claims that could have been brought against the defendants). As the Separate Agreement was directed at settling Plaintiffs' potential non-FLSA claims, further review of the Separate Agreement is not required.

## IV.   RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Joint Motion to Approve Settlement Agreement

and to Dismiss with Prejudice (Doc. 21);

2.  **FIND** that the parties' Revised Settlement Agreement (Doc. 21-1) is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

3.  **DISMISS** the Complaint (Doc. 1-1) **WITH PREJUDICE**; and

4.  **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on January 23, 2023.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE